**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DARNELL NOLLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:15-cv-00149-CAR-CHW |
| | : | |
| **Warden MCLAUGHLIN** *et. al.* | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| **Defendants.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants Blakely, Cox, Demundo, Eaddie, Ellison, Fountain, Frazier, Haynes, Jackson, Jones, McIntyre, McLaughlin, Myrick, Ridley, and Woolfork. Doc. 31. Plaintiff has also filed a Motion to Amend, requesting the addition of five new Defendants and two new claims. Doc. 46.

For the reasons set out below, it is **RECOMMENDED** that the Defendants' Motion be **DENIED** as to Plaintiff's due process claims relating to his October 2014 disciplinary hearing and his claims for injunctive relief against McLaughlin and Myrick; and **GRANTED** as to his excessive force claims against Defendants McLaughlin, Blakely, Jones, McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork; and as to his failure to provide adequate medical treatment claims against Defendants Haynes and Frazier, because he failed to exhaust his administrative remedies.

It is further **RECOMMENDED** that Plaintiff's Motion to Amend be **DENIED** with regard to his claims against Homer Bryson, and his due process claims arising out of his confinement at Valdosta and Ware State Prisons, and **GRANTED** with regard to Plaintiff's due

process claims against Defendants Trevonza Bobbitt, S. Henderson, Stephen Bostick, and Dorian Giles at Macon State Prison.

## I.   BACKGROUND

### A.   Plaintiff's Original Complaint and Factual Allegations

Plaintiff Darnell Nolley, an inmate currently confined at Ware State Prison ("WSP"), filed this pro se civil rights complaint under 42 U.S.C. § 1983 on April 27, 2015. Doc. 1.

The complaint alleged that on October 7, 2014, Defendant McLaughlin approached Plaintiff's cell and opened the steel tray flap on Plaintiff's cell door.  Plaintiff assumed Defendant McLaughlin wished to speak to him about a complaint Plaintiff had made about the conditions of his cell.  When Plaintiff attempted to put his right hand through the tray flap to hold the flap open so he could speak with Defendant McLaughlin, Defendant McLaughlin "slamm[ed]" Plaintiff's hand in the flap "approximately 10-15 times, causing multiple cuts and lacerations to the Plaintiff's hand and wrist area as well as a visually obvious fracture to his right hand."  Doc. 1, p. 6. When Plaintiff attempted to remove his hand from the tray flap, Defendant McLaughlin exerted additional pressure and "began taunting" Plaintiff.  *Id*.  Plaintiff further alleges that Defendants Blakely, Jones, McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork witnessed the assault and did nothing to prevent it or intervene.

After the assault, Plaintiff was taken to medical and examined by Defendants Haynes and Frazier.  Plaintiff contends these Defendants failed to provide him with "much needed sutures" for one of the lacerations on his hand and did not provide him with a cast or brace for his broken hand. Defendant Haynes treated Plaintiff's lacerations with peroxide and wrapped them in a bandage, and Defendant Frazier ordered an x-ray for Plaintiff's right hand. Doc. 1, p. 9. Plaintiff contends he received no other medical treatment; he was never provided the results of his x-rays

but was told "nothing was wrong with his hand" and that he had a preexisting injury; and that Plaintiff's right hand is now "permanently disfigured" because the injuries were left to "heal on their own in time." *Id.* at 10.

Plaintiff was also served with disciplinary charges for "failing to follow instructions" based on the alleged assault. Doc. 1, p. 7. Plaintiff alleges he requested to call as witnesses to the incident the inmates in the cells on either side of his cell as well as Defendants Blakely, Jones, McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork. Plaintiff alleges he had a disciplinary hearing before Defendants Demundo and Ellison and that Defendant Demundo prohibited Plaintiff from calling any of his witnesses, stating that "he had an obligation to accept the word of his officials over an inmate." *Id.* Plaintiff was found guilty of the disciplinary charge and appealed it to Defendant McLaughlin and later to Defendants Myrick and Fountain. Each of Plaintiff's appeals was denied. *Id.* at 7-8. Plaintiff further asserts that disciplinary charges were inappropriately used to prolong prisoners' confinement in segregation and that he has been confined in segregation from June 9, 2014 until the filing of his complaint.

B. <u>Procedural Background</u>

Upon frivolity review pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to go through for further factual development:

1. Excessive force claims against Defendants McLaughlin, Blakely, Jones, McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork;
2. Failure to provide adequate medical treatment claims against Defendants Haynes and Frazier;
3. Due process claims against Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain; and
4. Injunctive relief against Defendants McLaughlin and Myrick in their official capacities.

See Doc. 24. The Court adopted a Recommendation to dismiss Plaintiff's claims for damages against Defendants McLaughlin and Myrick in their official capacities. Doc. 42. On November

25, 2015, all Defendants moved to dismiss Plaintiff's claims. Doc. 31. Discovery was stayed pending the resolution of Defendants' Motion to Dismiss. Doc. 36. On January 4, 2016, Plaintiff filed a Motion for Extension of Time to File a Response to Defendants' Motion to Dismiss. Doc. 37. In that Motion, Plaintiff cited a lack of legal supplies as reason for a thirty day extension, which the Court granted the following day. See Doc. 39.

On January 22, 2016, Plaintiff filed a letter with the Court, requesting that the Court treat a separate complaint, filed in Case No: 5:16-cv-00005, as an amended complaint in the instant case. Doc. 40. Plaintiff stated that the Clerk's Office erred in opening the new case, and wished the complaint to be "an amended complaint" in the instant case "as a matter of course." Plaintiff further stated that both his Motion for Extension of time (Doc. 37), and the additional complaint were filed on the same day, and were received by the clerk's office the same day. Doc. 40.

On February 3, 2016, Plaintiff filed another letter with the Clerk's Office, this time in his new case. See Letter, *Nolley v. Bryson*, No. 5:16-cv-00005 (M.D. Ga. Feb. 3, 2016), ECF. No. 6. In that letter, Plaintiff informed the Clerk's Office that the complaint in the new case was intended as an amended complaint in his original case, and that he had already attempted to have the Clerk correct the error. See *id.*

Upon consideration of Plaintiff's unique situation, the Court directed Plaintiff to file a Motion for Leave to Amend his Complaint in the current case, and further instructed him to attach his proposed Amended Complaint "at the same time." Doc. 42. Plaintiff responded on March 31, 2016, with a Motion to Amend, but informed the Court that due to a lack of paper he was unable to "draft another amended complaint from scratch." Doc. 44. He further requested that the Court treat the complaint filed in 5:16-cv-00005 as his proposed amended complaint in

the instant case. A copy of that Complaint was filed in this case, and Defendants were directed to respond to the new allegations.

## II.      MOTION TO AMEND

As discussed above, Plaintiff's original complaint brought a Due Process claim based on a disciplinary hearing where he was not allowed to call witnesses. See e.g. Docs. 1; 24. Plaintiff was allowed to proceed with the claim against Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain. Doc. 24. Plaintiff filed the instant Motion to Amend seeking to add Homer Bryson, Trevonza Bobbitt, S. Henderson, Stephen Bostick, and Dorian Giles as defendants in two new Due Process claims, challenging (1) his initial classification and placement in Tier II segregation at Macon State Prison, and (2) his continued confinement in Tier II segregation while at Macon State Prison. See Complaint, *Nolley v. Bryson*, No. 5:16-cv-00005 (M.D. Ga. Jan. 4, 2016), Doc. 1.

Defendants filed a response objecting to Plaintiff's Motion to Amend, arguing that the Motion to Amend should be denied as futile. Doc. 47. Defendants further argued that Plaintiff's Due Process claim is barred because Plaintiff failed to exhaust his claim and failed to state a claim under Section 1983, and because the Defendants are entitled to qualified immunity.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course and "in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In the context of Section 1983 claims filed by prisoners, nothing in the PLRA "preclude[s] the [] court from granting a motion to amend." *Brown v. Johnson*, 387 F.3d 1344, 1348 (11th Cir. 2004).

Plaintiff's new due process claims arise out of his June 9, 2014, transfer from Hays State Prison to Macon State Prison, when he was placed in Tier II segregated housing immediately upon arrival. Doc. 46, p. 4. On June 13, 2014, counselor Giles gave Plaintiff an assignment memo, containing the signatures of McLaughlin and Giles, and stated that Plaintiff was being assigned to the Tier II Program for "the safety and secure operation of the facility." Doc. 46, p. 4. Plaintiff alleges that the memo did not contain any facts describing how or why the Plaintiff was considered a threat to the facility. *Id.* at 5. Plaintiff states that Defendants Bobbitt, Ridley, and Bostick failed to conduct an initial Tier II administrative segregation placement hearing, as required by Departmental policy, and thus foreclosed the opportunity to appeal his initial segregation assignment. *Id.* Plaintiff affirms that this initial assignment violates Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB09-0003. *Id.* Plaintiff further alleges that during his "seemingly indefinite confinement in segregation," he has remained in "Phase One and has not been provided with any meaningful post-placement periodic review of his segregation confinement." Doc. 46, p. 9. Plaintiff also notes that on May 26, 2015, Plaintiff was transferred to from Macon State Prison to Valdosta State Prison, and immediately placed in the Tier II program; and on July 21, 2015, Plaintiff was transferred from Valdosta to Ware State Prison, where he was "again, immediately placed in its Tier II Program." Doc. 46, p. 8.

As shown by the facts above, Plaintiff's amended complaint seeks to add several new defendants and two new due process claims. Plaintiff's original due process claim alleged that his disciplinary hearing violated his constitutional rights and *prolonged* his tenure in administrative segregation, when he was not allowed to call witnesses. In the proposed amended complaint, Plaintiff challenges both his *initial* confinement into administrative segregation,

without a hearing; and brings a separate claim that he is being deprived of any meaningful review in Tier II segregation. Further, according to Plaintiff, the newly named Defendants were responsible for the operation of the Macon State SMU Tier II program, assisted the Warden in determining housing assignments and inmate transfers, were personally involved in the decision to keep Plaintiff confined in the SMU Tier II program, and served on the periodic review committee. See e.g. Doc. 46, pp. 1-4.

Specifically, Plaintiff states that Trevonza Bobbitt, was a Unit Manager of Tier II Administrative Segregation at Macon State and comprised "one third of Macon State's Tier II Program Classification Committee." Doc. 46, p. 2. Plaintiff alleges that as a member of the classification committee, Bobbitt failed to conduct an initial placement hearing, which deprived Plaintiff of his opportunity to appeal the classification. Doc. 46, p. 4.  Plaintiff states that S. Henderson, succeeded Ridley as the Officer-in-Charge of Tier II Segregation at Macon State Prison in November 2014. Doc. 46, p. 3. Plaintiff alleges that Stephen Bostick was a correctional counselor assigned to Macon State's Tier II prisoners and was also a member of the Classification Committee. Doc. 46, p. 3. Plaintiff alleges that as a member of the classification committee, Bostick failed to conduct an initial placement hearing, which deprived Plaintiff of his opportunity to appeal the classification. Doc. 46, p. 4.  Plaintiff states that Dorian Giles was a correctional counselor assigned to Macon State's Tier II prisoners. Doc. 46, p. 3. Plaintiff alleges that Defendant Giles "served Plaintiff" with his initial assignment memo into Tier II segregation, and signed the memo, along with Defendant McLaughlin. Doc. 46, p. 4. Plaintiff further alleges that Defendant Giles was acting as an agent of Defendant Bostick in assigning Plaintiff to Tier II segregation. Doc. 46, p. 5.

Because Plaintiff's allegations against Defendants Bobbit, Henderson, Bostick, and Giles, are sufficient to indicate that the Defendants personally participated in the alleged denial of due process of confining Plaintiff in administrative segregation without a hearing, and that said Defendants continued his confinement in Tier II while denying any meaningful review of his classification at Macon State Prison, the Court cannot find at this stage that his claims would be futile.

Further, Defendants would not be significantly prejudiced by the addition of the new defendants. Although the Court has conducted a frivolity review of Plaintiff's original complaint and Defendants have filed their motion to dismiss, the Court has not ruled on the Motion to Dismiss and discovery has not yet commenced in this case. The new claims and parties are closely related to the claims alleged in the original complaint and will not substantially expand the scope of discovery. There is nothing to indicate that the Motion to Amend was not made in good faith. See *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988) ("The proper inquiry is whether [Plaintiff] was guilty of undue delay or bad faith, or whether undue prejudice would result to the appellees.").

Plaintiff's claims against Homer Bryson, however, are futile and should not be added in this case. Plaintiff argues that Bryson, in his capacity as the Commissioner of the State of Georgia's Department of Corrections, is legally responsible for the overall operation of the Department and each institution under its jurisdiction. Doc. 46, p. 2. He requests injunctive relief from the Court in the form of an order requiring "Bryson to release the Plaintiff from punitive segregation and place him in general population, with restoration of all rights and privileges." Doc. 46, p. 18. Plaintiff does not argue that Bryson is responsible for the operation of the SMU, assists the Warden in determining housing assignments and inmate transfers, was either

personally involved in the decision to keep Plaintiff confined in the SMU, or knowingly failed to prevent Plaintiff from remaining in punitive confinement. Instead, Plaintiff states that "Bryson retains the ability to end a constitutional violation if so ordered by this Court." Doc. 46, p. 9.

These allegations show that Plaintiff named Homer Bryson as a party simply because he holds a supervisory position as the Commissioner of the GDOC. A supervisory official cannot be held liable, under Section 1983, for the unconstitutional acts of his subordinates absent evidence that the official personally participated in the constitutional violation or that a causal connection exists between supervisor's acts and subordinate's conduct. See *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) ("Averhart's contention that . . . defendants are legally responsible for his safety is just a legal conclusion: it is not a meaningful factual allegation and, therefore, is insufficient to preclude dismissal.").  See also *Walker v. Pataro*, No. 99CIV.4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) (A warden is not "personally involved" in a constitutional violation "merely because he fails to respond to complaints from a prisoner."). Plaintiff's Complaint does not include sufficient allegations to show either a personal involvement by Defendant Bryson or a causal connection between Bryson and his continued confinement in Tier II.

Plaintiff's proposed amendments challenging the Tier II program while confined at Valdosta and Ware State Prisons must also be denied as futile, as Plaintiff has not alleged that any of the named Defendants participated in his initial classifications, placements, continued confinements, or periodic reviews at those prisons. All the Defendants named in the current action are prison officials at Macon State Prison.

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion to Amend be **GRANTED** as to his due process claims against Humphrey, Bobbit, Henderson, Bostick, and Giles; and

**DENIED** as to Plaintiff's claims against Homer Bryson, and his Tier II confinement at Valdosta and Ware State Prisons.

### III.   MOTION TO DISMISS

Defendants argue that Plaintiff's original complaint should be dismissed on the following grounds (1) abuse of process; (2) failure to exhaust; and (3) failure to state a claim under Section 1983. Defendants also argue that (5) under the PLRA, Nolley's failure to allege injuries bars the recovery of compensatory and punitive damages; (6) Nolley is not entitled to injunctive or declaratory relief, in part because his transfer from MSP moots his requests for such relief; and finally, (7) Defendants are entitled to qualified immunity.

### A. ABUSE OF JUDICIAL PROCESS

The Eleventh Circuit has recognized that a prisoner's "failure to comply with court rules requiring disclosures about [his] previous litigation constitutes an abuse of the judicial process warranting dismissal" of the party's pleading as frivolous or malicious under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). *Sears v. Haas*, 509 F. App'x 935, 936 (11th Cir. 2013) (citing *See Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir.1997); *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007). "Although *pro se* pleadings are held to a less stringent standard, a plaintiff's *pro se* status does not  excuse mistakes regarding procedural rules." *Id.* (citing *McNeil v. United States*, 508 U.S. 106 (1993)).  A prisoner's failure to disclose his full litigation history, when requested to do so, is therefore not treated as a minor omission. Such information is highly relevant where, as in this case, a prisoner seeks to proceed without prepayment of the filing fee and the Court has a duty to enforce the statutory "three strikes" bar of 28 U.S.C. § 1915(g). This information is also necessary for the court to determine, prior to service, whether a prisoner's claims are

related to (or should be considered in connection with) another pending action and – more importantly – whether any claims or issues in the current complaint have already been decided. *Williams v. Wiggins*, No. 6:09–cv–943, 2010 WL 4983665, at *2 (M.D. Fla. Dec. 2, 2010). Reliable disclosures are thus essential for an efficient and effective screening of the large number of *pro se* prisoner complaints received by this Court. *See* 28 U.S.C. § 1915A(a). As other courts within this Circuit have reasoned, if *pro se* plaintiffs suffered no substantial penalty for providing false or misleading information in the complaint, "there would be little or no disincentive" for prisoners to attempt to evade the requirement that such disclosures be made. *Williams,* 2010 WL 4983665 at *4.

Defendants' argue that Plaintiff misled the Court in his complaint as he allegedly failed to list all of his prior and currently pending litigation in federal court. By way of example, the Defendants list "(1) *Nolley v. Bryson*, No. 5:15-cv-324 (M.D. Ga.), which this District dismissed for abuse of judicial process; (2) *Nolley v. Deal*, No. 4:13-cv-313 (N.D. Ga.), which was dismissed for failure to state a claim; (3) *Nolley v. Bryson*, No. 4:15-cv-189 (N.D. Ga.); (4) and *Nolley v. Unnamed*, No. 4:15-cv-161 (N.D. Ga.)." See Doc. 31-1, p. 7.

The record shows that Plaintiff did not mislead the Court when he filed his complaint. Plaintiff filed his complaint on April 27, 2015. See Doc. 1. In his complaint, Plaintiff listed two additional lawsuits that he had previously filed or were currently pending: *Nolley v. Nelson*, 5:15-cv-75 (M.D. Ga), and *Nolley v. Deal*, No. 4:13-cv-313 (N.D. Ga.). Court records confirm that at the time Plaintiff filed his Complaint, on April 27, 2015, Plaintiff had previously filed only the two lawsuits he listed. The other lawsuits Defendants list were filed *after* April 27, 2015: *Nolley v. Bryson*, No. 5:15-cv-324 (M.D. Ga.) was filed on August 24, 2015; *Nolley v. Bryson*, No. 4:15-cv-189 (N.D. Ga.) was filed on October 5, 2015; and *Nolley v. Unnamed*, No.

4:15-cv-161 (N.D. Ga.), was filed August 31, 2015. Thus Plaintiff did not mislead the Court when he filed his Complaint, and his claims are not subject to dismissal for abuse of process.

## B. EXHAUSTION

Before addressing Plaintiff's claims on the merits, the Court must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit must follow the two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court

takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id*. At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

<u>Available Administrative Remedies</u>

The record reflects that during the relevant period, after December 10, 2012, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 31-3, pp. 1–15. At step one, a prisoner wishing to file a grievance is required to file no later than then 10 calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 8. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id*. The Warden must respond within 40 days. *Id*., p. 10. If this initial grievance is rejected, the prisoner is required to appeal within 7 calendar days. *Id.*, p. 12. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id.*

An inmate may file "a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally." *Id.*, p. 6. However, disciplinary actions, including any punishment, fees, or assessments are determined to be "non-grievable." *Id.* The disciplinary appeal procedure is located in GDC SOP IIB02-0001. *Id.*

<u>*Turner* Analysis</u>

Applying the *Turner* analysis to the procedures outlined above, Defendants are entitled to dismissal at step one for three of Plaintiff's four claims. Plaintiff alleges that he filed an

administrative appeal following his disciplinary hearing, and that his appeal was denied. Doc. 1-2, p. 8. Plaintiff then filed a "second-level" appeal with Defendants Myrick and Fountain, but his appeal was again denied. *Id.* Plaintiff alleges no further use of administrative remedies. See e.g. Doc. 1. Taking Plaintiff's facts as true, two of Plaintiff's claims against Defendants must be dismissed for failure to exhaust: (1) excessive force claims against Defendants McLaughlin, Blakely, Jones, McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork; and (2) failure to provide adequate medical treatment claims against Defendants Haynes and Frazier. From the face of his complaint, it appears that Plaintiff exhausted his administrative remedies as to his due process claims against Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain; and claims for injunctive relief against Defendants McLaughlin and Myrick regarding his disciplinary record.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. The weight of the evidence presented by Defendants supports a finding that Plaintiff did not fully and properly exhaust his administrative remedies. In addition to their Motion to Dismiss, Defendants present the Affidavit of Eddie Walker, the Grievance Coordinator at Macon State Prison (Doc. 31-2); Standard Operating Procedure IIB05-0001 (Doc. 31-3); Plaintiff's Grievance History (Doc. 31-4); Plaintiff's Movement History (Doc. 31-5); and copies of dockets from Plaintiff's other pending cases (Doc. 31-6).

Eddie Walker's affidavit asserts that Plaintiff filed "just five" grievances while incarcerated at Macon State Prison, all of which were filed between March 5, 2015 and June 2, 2015. Doc. 31-2, p. 7. None of the grievances concerns events occurring in or about October 2014. *Id.* Indeed, Plaintiff's grievance history shows that Plaintiff did not file a grievance from May 29, 2014 until March 5, 2015. See Doc. 31-4.

14

Mr. Walker also reviewed Plaintiff's movement history, and found that on May 26, 2015, Plaintiff was transferred from Macon State Prison to Valdosta State Prison, and that on July 21, 2015, Plaintiff was transferred from Valdosta State Prison to Ware State Prison, where he is currently confined. Doc. 31-2, p. 6. Plaintiff's grievance history further reflects that while confined at the other prisons, Plaintiff has continued to file grievances, but has not filed a grievance regarding any events occurring in October 2014. *Id.* at 8.

The evidence presented by Defendants shows that at step two, two of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies as he did not file a grievance regarding his excessive force claims or in adequate medical treatment claims, within ten days from date he knew or should have known of the facts underlying his grievance.

Therefore, because the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90, 93–97 (2006), and because the Defendants have met the burden of demonstrating that Plaintiff did properly exhaust his administrative remedies, it is recommended that Plaintiff's complaint as to those two claims be dismissed.

## C.  PLAINTIFF'S DUE PROCESS CLAIM

Plaintiff's due process claim against Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain cannot be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

1.  Applicable Legal Standards for a Motion to Dismiss

A complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556. When considering a motion to dismiss for failure to state a claim, the Court must accept all allegations in the complaint as true, and the Court must construe the facts in the light most favorable to the plaintiff. *Lopez v. Target Corp.*, 676 F.3d 1230, 1232 (11th Cir. 2012). The Court is not bound to accept as true "'a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. It is well-established that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679, citing *Twombly*, 550 U.S. at 556. Additionally, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

This Recommendation considers evidence presented in exhibits attached to Plaintiff's responses and separate filings. This liberal construction of Plaintiff's allegations is based on the well-established principle of leniency, which allows *pro se* litigants greater flexibility with the standards for pleadings. *McNeil v. U.S.*, 508 U.S. 106, 113 (1993). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted). This policy "provides pro se laypersons with certain benefits while navigating the often-difficult legal labyrinth, [and] also provides Federal courts the ability to relax certain procedural rules when dealing with pro se parties, all in the interests of justice." *Jones v. Nicholson*, No. 1:07–cv–16 (WLS), 2011 WL 2160918, at *3 (M.D.Ga. Jun. 1, 2011), *see also Waters v. Philbin*, No. 7:10-CV-105 HL, 2011 WL 4043788, at *1 (M.D. Ga. Sept. 12, 2011) (considering evidence presented in Plaintiff's Response to Defendants' Motion to Dismiss).

2.      Protected Liberty Interest

Plaintiff specifically contends that Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain violated his due process rights by depriving him of his due process rights at a disciplinary hearing that resulted in continued confinement in SMU. Further, as Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain have had a chance to respond to Plaintiff's proposed amended complaint, the factual allegations raised in his amended complaint are incorporated in this analysis. Because Plaintiff can demonstrate that he has a protected liberty interest, Plaintiff's due process claim should move forward.

In order to bring a successful procedural due process violation through a 1983 claim challenging a prisoner's confinement, the prisoner first "must have a liberty interest created by the United States Constitution or by a state." *Walker v. Florida Parole Com'n*, 299 F. App'x 900, 901 (11th Cir. 2008) (citing *Monroe v. Thigpin*, 932 F.2d 1437, 1441 (11th Cir. 1991). The Supreme Court has identified two methods in which a prisoner's liberty interests may be deprived in relation to his confinement in a state prison. See *Sandin v. Connor*, 515 U.S. 472 (1995). The first occurs when his confinement is of a nature that he is held in excess of his court imposed sentence, and the second occurs when the state deprives him of certain benefits conferred on other prisoners. *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007).

Plaintiff has not alleged that placement in administrative segregation will extend the length of his incarceration, so that method need not be analyzed in this case. For the second kind of liberty interest, "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Al-Amin, v. Donald*, 165 F. App'x 733 (11th Cir. 2006) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). For a liberty interest to be triggered by a

deprivation of in-prison benefits, the deprivation must "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wallace*, 229 F. App'x at 830. (quoting *Sandin*, 515 U.S. at 484).  "The touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484).

Plaintiff first alleges that inmates housed in general population within Georgia Prisons have many benefits incident to ordinary prison life that Plaintiff is being denied while housed in the Special Management Unit at Macon State Prison. Plaintiff alleges that this differential treatment both rises to the level of being atypical and significant and is done for pre-textual and capricious reasons which belie its punitive nature.

In support of his claim, Plaintiff alleges that inmates housed in the SMU are subjected to the following treatment. Plaintiff claims that upon entering the SMU, all of his property was confiscated without committing an infraction. Doc. 46, p. 7. He states that SMU inmates are placed in cells with completely obscured windows for twenty-four hours a day and held in isolation except for two days a week in which they are allowed outside for two and half hours. *Id*. Plaintiff further recognizes that "even the wall-mounted stainless steel mirror has been removed from the walls of the Tier II cells, so that Plaintiff is deprived of the sight of his own image." *Id.* at 6. When SMU inmates are allowed outside, they are still held in isolation in "cages." The cage measures seven by sixteen feet, and is enclosed by a high barbed-wire fence and enclosed by a "huge green tarp." *Id* at 7. Further the windows are permanently left open,

subjecting Plaintiff to "subfreezing temperatures" and providing an environment for "an excessive insect infestation problem (mostly mosquitos and spiders)." Doc. 46, pp. 7-10.

Inmates are allowed to shower three times a week. Doc. 46, p. 9. Plaintiff further alleges that inmates in the SMU are punitively denied all basic privileges. Plaintiff is not allowed to use the phone, and is precluded from purchasing commissary items, including personal hygiene items. *Id.* at 7. Further, Plaintiff is permitted one two-hour non-contact visit per month, and is "denied access to many other privileges afforded prisoners in the general population, including access to the prison's general and law libraries, group religious worship services, education and vocational opportunities, and access to televisions." *Id.*

In contrast, Plaintiff states that the general prison population has extensive liberty within the confines of the prison. Plaintiff alleges that they enjoy out of cell time for one-hundred and ten hours per week of out-of-cell recreation, and social interaction; and are eligible for "at least two to six hours of outside recreation every day." Doc. 46, p. 7. General population prisoners are also allowed a minimum of eight six-hour contact visits per month. *Id.*

In comparison to the alleged conditions of general population inmates as a baseline from which to measure the ordinary incidents of prison life, the conditions allegedly imposed upon Plaintiff indicate an atypical and significant hardship. In addition to conditions typical of ordinary segregated confinement, Plaintiff alleges that (1) day-to-day human interaction, including cell-to-cell communication, is restricted, (2) the duration of the confinement has lasted contrary to GDC procedure that graduates inmates into less severe prison environments, and (3) his SMU placement is indefinite. See *Wilkinson,* 545 U.S. 209 (holding that conditions of "supermax" facility, taken together, imposed an atypical and significant hardship).[1]

---

[1] In *Wilkinson*, the Supreme Court described the Ohio State Penitentiary Supermax facility, observing that

In response, Defendants assert that the conditions as alleged do not rise to the level necessary to constitute atypical or significant hardship. Defendants rely on several Eleventh Circuit Cases to argue that the amount of time Plaintiff has spent in the SMU combined with the level of restriction imposed does not meet the *Sandin* standard. These cases are distinguishable from the factual restrictions Plaintiff has alleged and the fact that Plaintiff asserts he is being held *indefinitely*. In *Morefield v. Smith*, 404 F. App'x 443 (11th Cir. 2010), for example, the Eleventh Circuit rejected a liberty interest claim where Plaintiff was held in administrative segregation for four years and "the conditions of [] confinement were generally equivalent to general prison population conditions." Similarly, in *Al-Amin*, the Court found that "inmates in administrative segregation 'are treated similarly' to those in general population," and Al-Amin had only been held for three years. *Al-Amin*, 165 F. App'x 733. Plaintiff has alleged a wider gap between the conditions of confinement in general population and in SMU than is described in either *Morefield* or *Al-Amin*. And although Plaintiff alleges that he has "only" been held in the SMU for over nine months at the time of filing his complaint, he claims that he is being held there indefinitely, without "any meaningful post-placement periodic review of his segregation confinement." Doc. 46, p. 9.

---

 In OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.

Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.

545 U.S. at 214. The Court held that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Wilkinson,* 545 U.S. at 224 (citations omitted). The conditions in the SMU, as alleged by Plaintiff, are substantially similar to the conditions in question in *Wilkinson*.

Where Plaintiff has plausibly alleged a liberty interest created by the state, the question next turns to whether he was afforded the procedures due to him during his disciplinary hearing. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. *Id.* at 563–67; see also *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999); *Hilderbrandt v. Butts*, 550 Fed. App'x 697, 700 (11th Cir. 2013); *Asad v. Crosby*, 158 F. App'x 166, 172–73 (11th Cir. 2005).

The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"—"whether any evidence at all" supports the action taken by prison officials.

*Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.1981)).

Plaintiff sufficiently alleges that he received constitutionally inadequate due process. Plaintiff states that he requested to call as witnesses to the incident the inmates in the cells on either side of his cell as well as Defendants Blakely, Jones, McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork.  Plaintiff alleges he had a disciplinary hearing before Defendants Demundo and Ellison and that Defendant Demundo prohibited Plaintiff from calling any of his witnesses,

stating that "he had an obligation to accept the word of his officials over an inmate." Plaintiff was found guilty of the disciplinary charge and appealed it to Defendant McLaughlin and later to Defendants Myrick and Fountain. Each of Plaintiff's appeals was denied.

In light of Plaintiff's amended allegations that the conditions in SMU imposed an atypical and significant hardship and that Defendants' refused to allow Plaintiff to call witnesses, Plaintiff's due process claim challenging his disciplinary hearing may go forward against Defendants Ellison, Demundo, McLaughlin, Myrick, and Fountain.

### D. INJUNCTIVE RELIEF IN OFFICIAL CAPACITIES

Plaintiff also seeks an injunction ordering Defendants McLaughlin and Myrick in their official capacities to expunge his disciplinary conviction from his record.[2] Doc. 1, p. 12. Defendants argue that Plaintiff fails to state a claim for two reasons: (1) Plaintiff's request is moot as Plaintiff is no longer incarcerated at Macon State Prison (Doc. 31-1, p. 27) and (2) Plaintiff does not assert a continuing or ongoing violation of the law and thus, does not fall into the *Ex Parte Young* exception (*Id.*).

Generally, the transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. See *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). However, in the instant case, Plaintiff's requests for injunctive and declaratory relief with the expungement of his disciplinary hearing are not moot as Plaintiff alleges that his record keeps him in SMU indefinitely—a continuing violation. Because Plaintiff has alleged plausible due process claims from his indefinite confinement in SMU, any request

---

[2] Plaintiff makes a similar request in his Amended Complaint against Homer Bryson. Doc. 46, p. 18. That claim for injunctive relief is recommended to be dismissed as frivolous.

for injunctive relief based on that violation cannot be dismissed at this stage of the case.

As discussed above, Plaintiff does assert a continuing or ongoing violation of the law and thus his claim falls under the *Ex parte Young* exception. The *Ex parte Young* exception provides that "official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment." *Scott*, 405 F.3d at 1255. In other words, "the Eleventh Amendment does not prohibit a plaintiff from suing state officials in their official capacities for prospective injunctive relief and costs associated with that relief." *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989). To determine whether the *Young* exception applies, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)) (alteration in original). This inquiry "does not include an analysis of the merits of the claim." *Id.* at 646. A "prayer for injunctive relief-that state officials be restrained from enforcing an order in contravention of controlling federal law-clearly satisfies [the court's] 'straightforward inquiry.'" *Id.* at 645.

The Plaintiff here arguably seeks some prospective injunctive relief that is directly related to the constitutional violations he alleges. Specifically, Plaintiff seeks the expungement of his disciplinary record, as the record is "collaterally utilized by prison officials as a basis … for prolonging a prisoner's assignment to the Tier II program." Doc 46, p. 13. Accordingly, the *Ex parte Young* exception applies, and Defendants are not entitled to Eleventh Amendment immunity on Plaintiff's claim for expungement. See, e.g., *Wolfel v. Morris*, 972 F.2d 712, 719

(6th Cir.1992) (finding that Eleventh Amendment did not bar prisoners' claim for expungement of their disciplinary records because claim was for prospective injunctive relief). Thus Plaintiff's claim cannot be dismissed.

### E.  QUALIFIED IMMUNITY

Defendants contend that they are entitled to dismissal because they are protected from suit by qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trial (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1991)). The qualified immunity inquiry involves a three-step process. *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). First, the burden is on the defendant to prove that he was acting within the scope of his discretionary authority. *Id.* If the defendant meets this burden, then the Court must determine whether plaintiff suffered a constitutional violation. *Id.* Finally, if the facts prove the violation of a constitutional right, the inquiry is whether the law with respect to that right was clearly established. *Id.*

The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show that "a materially similar case has already been decided." *Id.* (internal quotations and citations omitted). Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotations and citation omitted). "Finally,

the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (internal citations omitted). Clearly established precedent in this Circuit means decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

Defendants act within their discretionary authority when their "actions were undertaken pursuant to the performance of their duties and within the scope of their authority." *Rich v. Dollar,* 841 F.2d 1558 (11th Cir. 1988). Determining whether a government employee was acting within discretionary authority focuses on whether that employee (1) was performing a legitimate job-related function (2) "through means that were within his power to utilize." *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (quoting *Hill v. Dekalb Reg'l youth Det. Ctr.*, 40 F.3d 1176, 1185, n. 17 (11th Cir. 1994)). This inquiry looks to the general nature of the defendant's actions to determine if the action would have "fallen within his legitimate job description" but for the alleged constitutional violation. *Id.*

The first inquiry of the qualified immunity analysis is unquestionably met; Defendants were acting within the scope of their discretionary functions as government employees with respect to all actions at issue in this case. It is a jailer's job to administer the jail. The activities forming the basis of Plaintiff's three claims are within the scope of Defendant's legitimate job description, therefore, the inquiry progresses to whether Plaintiff's constitutional rights were violated.

As outlined above, Plaintiff has alleged a protected liberty interest conferring due process rights. Both the protected liberty interest and level of due process rights due to Plaintiff are clearly established federal law. See *Sandin*, 515 U.S. 472; *Superintendent, Massachusetts*

*Correctional Institution, Walpole v. Hill*, 472 U.S. 445 (1985); *Wilkinson*, 545 U.S. 209, 223 (2005); *Wallace*, 229 F. App'x 827.

### F.  AVAILABLE MONETARY RELIEF UNDER THE PLRA

Plaintiff's requests for damages are listed in the last several pages of his proposed amended complaint, as well as his original complaint. See Doc. 46, pp. 18-20. In his proposed amended complaint, Plaintiff requests:

> compensatory damages for the loss of limited liberty enjoyed by prisoners, resulting from his segregated confinement, in that he is being confined for twenty-four hours a day in a cell roughly sixty (60) feet square, and deprived of most of his personal property—including his personal letters and photos—as well as his ability to work, read (books, magazines, newspaper, etc.), attend educational and vocational programs, watch television, associate with other prisoners, attend outdoor recreation in a congregate setting with the ability to engage in sports and other congregate recreation activities, attend meals with other prisoners, attend religious services, and receive conjugal visits, among several other things. Plaintiff separately and additionally seeks compensatory damages for the mental and emotion distress resulting from his protracted confinement in segregation without due process of law, to which he entitled because of the physical injuries sustained as a result of his physical abuse and as a result of the deprivation of medical care pled herein.

Doc. 46, pp. 18-19. Plaintiff also requests punitive and nominal damages against all Defendants. See *id.* at 19.

As the Eleventh Circuit has stated previously, Congress enacted the PLRA "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002). To effectuate this purpose, Congress placed various restrictions on the ability of prisoners to seek judicial relief and the form such relief may take.

Included among these restrictions is 42 U.S.C. § 1997e(e), the statutory provision at issue here. Section 1997e(e) is entitled "Limitation on recovery" and provides in full: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility,

for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

It is well settled that state officers acting in their official capacities are not "persons" under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff may not recover monetary damages from the Defendants, in their official capacity, under Section 1983. Plaintiff may seek damages from the Defendants, in their individual capacity, under Section 1983. As the Defendants note, however, the PLRA limits the type of monetary relief available to Plaintiff. Specifically, Plaintiff may only potentially recover *nominal damages*[3] based on his allegations of mental and emotional suffering (Doc. 46, p. 19), because (i) the PLRA requires a prior showing of physical injury, see 42 U.S.C. § 1997e(e); and because (ii) the record does not contain sufficient fact-based allegations suggesting that Plaintiff suffered from a "more than *de minimis*" injury.

The laundry list of injuries that Plaintiff attributes to his due process claims—the lack of social, religious, recreational and entertainment options—are mental and emotional in nature. The physical injuries Plaintiff alleges are not a result of his due process claims, but are a result of his excessive force and medical care claims, which must be dismissed for failure to exhaust. Plaintiff's claims for compensatory and punitive damages based on mental or emotional injuries must be dismissed; Plaintiff's request for nominal damages will move forward.

## CONCLUSION

For the reasons set out above, it is **RECOMMENDED** that the Defendants' Motion to Dismiss (Doc. 31) be **DENIED** as to Plaintiff's due process claims relating to his October 2014 disciplinary hearing and his claims for injunctive relief against McLaughlin and Myrick; and **GRANTED** as to his excessive force claims against Defendants McLaughlin, Blakely, Jones,

---

[3] See Al–Amin v. Smith, 637 F.3d 1192 (11th Cir. 2011).

McIntyre, Jackson, Ridley, Eaddie, Cox, and Woolfork; and his failure to provide adequate medical treatment claims against Defendants Haynes and Frazier, for failure to exhaust.

It is further **RECOMMENDED** that Plaintiff's Motion to Amend (Doc. 46) be **DENIED** with regard to his claims against Homer Bryson, and his due process claims arising out of his confinement at Valdosta and Ware State Prisons, and **GRANTED** with regard to Plaintiff's additional due process claims against Defendants Trevonza Bobbitt, S. Henderson, Stephen Bostick, and Dorian Giles at Macon State Prison.

Procedurally, only Defendant McLaughlin has been served with a copy of Plaintiff's proposed amended complaint and therefore has notice of Plaintiff's newly amended due process claims challenging his initial and continued confinement in SMU. Thus, it is further **ORDERED** that discovery in this case remain stayed pending the resolution of this Recommendation, and the subsequent filing of an answer, or other response as appropriate under the Federal Rules of Civil Procedure, 28 U.S.C. § 1915 and the PLRA, by all Defendants in the case.

Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 31st day of May, 2016.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge